Shirley A. McMILLAN, Plaintiff–Appellant/Cross–Respondent,

v.

FIRST STATE BANK OF JOPLIN, Defendant–Respondent/Cross–Appellant.

Nos. 20463, 20464.

Missouri Court of Appeals,
Southern District,
Division One.

Oct. 21, 1996.

Motion for Rehearing or Transfer
Denied Nov. 12, 1996.
Application to Transfer Denied
Dec. 17, 1996.

David R. Mitchell, Christopher J. Carpenter, Blue Springs, for plaintiff-appellant/cross-respondent.

Karl Blanchard, Jr., John Mollenkamp, Blanchard, Robertson, Mitchell & Carter, P.C., Joplin, for defendant-respondent/cross-appellant.

GARRISON, Judge.

A jury awarded Shirley A. McMillan (Plaintiff) $300,000 on her claim against First State Bank of Joplin (Bank), and denied relief to the Bank on its counterclaim. The trial court granted the Bank's motion for judgment notwithstanding the verdict (j.n.o.v.) on its counterclaim, and entered a $300,000 judgment in its favor. Both Plaintiff and the Bank appeal. Plaintiff contends the trial court erred in sustaining the Bank's motion for j.n.o.v., and the Bank alleges instructional error in Plaintiff's verdict director. We reverse in part and affirm in part.

Henry Doss (Henry), to whom Plaintiff was married at the time, sold a business entity in May, 1986, receiving $600,000 cash and a promissory note. Plaintiff and Henry used the cash to purchase six twelve-month $100,000 CD's from the Bank. Four of the CD's were in Plaintiff's name, either alone or jointly with children or her mother (Plaintiff's CD's). The other two were issued in Henry's name together with children.

At the same time, Plaintiff and Henry borrowed $500,000 and signed a one-year note, which provided for a single payment due on May 22, 1987. The note, introduced at trial, also stated that it was secured by five of the CD's, three of which were Plaintiff's. Plaintiff testified that when she signed the note, it did not list the CD's as security, and that she took the CD's with her when she left the Bank. She also testified that she and Henry signed an assignment in conjunction with the note, which stated that its purpose was to assign accounts as security for the note. Contrary to the one introduced at trial, however, Plaintiff testified that the assignment she signed did not include a designation of the CD's listed on the note. Rather, she said the assignment was blank, and she understood that it was to assign their interest in a savings account into which

they intended to place the payments on the note from the sale of the business.

Plaintiff and Henry also borrowed $95,000 from the Bank on August 20, 1986, signing a note which also called for a single payment one year later. Plaintiff testified that another of her CD's was given as security for this note.

The record indicates that after Plaintiff and Henry separated in January, 1987, Henry asked the Bank to waive the penalties for cashing the CD's early and to apply them to the $500,000 and $95,000 notes because interest on the notes was 2% more than was being paid on the CD's. The Bank apparently agreed to do that, and stopped paying interest on the CD's in January, 1987.[1] According to Plaintiff, when this happened, she called the Bank and was told that the CD's had been cashed. She denied being told that the CD's had been applied to the notes. A Bank officer testified that it waived interest on both notes between January and April 7, 1987 when it actually applied the CD's to the notes. The officer testified that this delay was caused by the fact that there was a "shortfall" between the amount of the CD's and the payoff of the notes which required the Bank to obtain a secured note to cover that amount. There was evidence that the Bank took a security interest in a boat in connection with the note to cover the "shortfall," but there was no evidence about who signed it. On April 9 or 10, 1987, Henry filed a petition seeking a dissolution of marriage which was later finalized.

Plaintiff's claim against the Bank was based on the failure to pay her interest on the CD's after January, 1987, and the cashing or redemption of them without her consent or knowledge. Her petition was in multiple counts, but her claim was submitted to the jury on a breach of contract theory. The Bank filed a counterclaim seeking a judgment in the amount of the notes, in the event it was determined that the CD's were not used to pay them. The jury returned a verdict in favor of Plaintiff on both her claim

and the Bank's counterclaim, assessing her damage at $300,000.

The Bank filed post-trial motions, including its motion for a j.n.o.v. on its counterclaim. One of its theories was that "once the jury found that some portion of the [CD's] ... had been misapplied to the extent of such misapplication, plaintiff is liable to the extent of such misapplication on the [notes]." The trial court entered judgment for Plaintiff in the amount of $300,000, and then sustained the Bank's motion for j.n.o.v. and entered a $300,000 judgment in its favor on its counterclaim.

On this appeal, Plaintiff claims that the trial court erred in granting the j.n.o.v. In reviewing a trial court's grant of a j.n.o.v., we consider the evidence and reasonable inferences supporting the verdict and disregard evidence to the contrary. *Int'l Minerals & Chem. Corp. v. Avon Products, Inc.,* 889 S.W.2d 111, 117 (Mo.App.E.D.1994). A j.n.o.v. is affirmed only if, upon such a review of the evidence, reasonable minds could not differ as to the verdict. *Id.* at 118.

In her first point, Plaintiff contends that the trial court erred in sustaining the Bank's motion for a j.n.o.v. on its counterclaim because the Bank had the burden of proof on that claim.

The basis for a j.n.o.v. is the same as that for a directed verdict. *Id.* at 119; *Friend v. Yokohama Tire Corp.,* 904 S.W.2d 575, 576 (Mo.App.S.D.1995) (entering a j.n.o.v. is the equivalent of directing a verdict at the close of the evidence); *Kincaid Enterprises, Inc. v. Porter,* 812 S.W.2d 892, 894 (Mo.App.W.D.1991) (motion for j.n.o.v. presents the same issue as a motion for directed verdict at the close of all the evidence).

The Missouri Supreme Court has recognized the general rule that verdicts may not be directed in favor of the party having the burden of proof. *Coleman v. Jackson County,* 349 Mo. 255, 160 S.W.2d 691, 693 (1942). The court acknowledged an exception to that general rule in saying:

> knowledge in order to present them to the Bank. She also presented testimony from a document examiner that the endorsements on the CD's were not written by her.

1. Plaintiff testified that she had her three CD's which the Bank claims were collateral for the $500,000 note in a safe at her home. It was her theory that Henry removed them without her

There is, however, a well-recognized exception to the rule. If the opponent, that is the party not having the burden of proof, admits either in his pleadings or by counsel in open court or in his individual testimony on the trial the truth of the basic facts upon which the claim of the proponent rests, a verdict may be directed against him, and if the proof is altogether of a documentary nature and the authenticity and correctness of the documents are unquestioned, and if such proof establishes beyond all doubt the truth of facts which as a matter of law entitled the proponent to the relief sought, and such proof is unimpeached and uncontradicted, the proponent will be entitled to a peremptory instruction. This is upon the theory that there is no question of fact left in the case and that upon the questions of law involved the jury has no right to pass.

*Id.* This rule, and the exceptions, were reaffirmed in *Brandt v. Pelican,* 856 S.W.2d 658, 664 (Mo.banc 1993). In *Brandt,* the court said:

> Except for the part of the *Coleman* rule concerning undisputed documentary proof, a directed verdict is not given in favor of the party having the burden of proof no matter how overwhelming that party's evidence may be or how minuscule the other party's evidence may be; a directed verdict in favor of the party having the burden of proof (usually the plaintiff) is never based upon the plaintiff's evidence. This is in recognition of the fact that the defendant, who has the benefit of the burden of proof, is entitled to try the case with no evidence at all and to rely solely upon the jury disbelieving the plaintiff's evidence. This strategy may result in a loss for the defendant, but it will not be on a directed verdict; the defendant is entitled to have the case go to the jury.

*Id.* at 664–65. Some courts have characterized directed verdicts in favor of the party with the burden of proof as "drastic." *Lee v.*

*Hartwig,* 848 S.W.2d 496, 500 (Mo.App.W.D. 1992).

Under the general rule, the Bank, having the burden of proof, would not be entitled to a j.n.o.v. on its counterclaim. To be entitled to such relief, therefore, the Bank must demonstrate that Plaintiff admitted the basic facts upon which the Bank's claims rested, either in her pleadings, by counsel in open court, or in her own testimony.[2]

The Bank alleged in its counterclaim that the CD's were assigned to it as collateral on the notes; that the amounts due under the notes were paid by the proceeds of the CD's; but "[i]f the proceeds of CD's ... were not used to pay [the note], which Defendant Bank denies, then [the note] remains unpaid...." The prayer of each count of the counterclaim was: "... in the event it is determined that [the note] was not paid by the proceeds of [the CD's] ... that the court enter judgment in favor of Defendant bank and against Plaintiff...."

The issue of Plaintiff's liability on the notes was submitted to the jury. The verdict directing instructions submitting the Bank's counterclaim[3] directed the jury to find for the Bank if they believed that the Bank and Plaintiff entered into an agreement in which the Bank agreed to lend and Plaintiff agreed to repay the money under the two notes, the Bank performed its agreement, Plaintiff failed to perform her agreement, and the Bank was damaged. The jury found against the Bank, however, on these claims. Although the Bank's pleaded theory against Plaintiff was conditioned on a determination that the notes were not paid by the CD's, it did not request a submission to the jury on that basis.

There was no evidence concerning the current status of the notes other than the fact that they each had two stamps on them; one said "Paid" with the date April 9, 1987, and the other said "Paid by Renewal." According to the Bank's testimony, these stamps resulted from the process of applying the

---

**2.** The other exception, where unquestioned documentary proof establishes the proponent's entitlement to relief as a matter of law, does not apply here.

**3.** The Bank submitted two counts of its counterclaim to the jury: the liability under the $500,-000 note and the liability under the $95,000 note.

CD's to the notes. A Bank officer testified that the "Paid" stamp was placed on the notes before it was discovered that there was a "shortfall" between the CD's and the amounts owing. Although it is not clear, the Bank's evidence indicates that the "Paid by Renewal" stamp was then placed on the notes because the "shortfall" was covered by a subsequent note. A directed verdict in favor of the party having the burden of proof, however, is never based on that party's evidence. *Brandt v. Pelican,* 856 S.W.2d at 664; *Int'l Minerals & Chem. Corp. v. Avon Products, Inc.,* 889 S.W.2d at 119.

Although Plaintiff admitted that she signed the notes and that she gave the Bank a security interest in one of the CD's on the $95,000 note, she consistently denied giving the Bank a security interest in her three CD's as collateral for the $500,000 note. She also denied that she endorsed the CD's or that Henry had authority to request that they be applied to the notes. Plaintiff never admitted the explanations for the stamps on the notes; she never admitted that the CD's were applied to the notes, or if they had been misapplied, that she would be indebted to the Bank in any amount; and she never admitted that there was anything owing on the notes. Under these circumstances, we are unable to conclude that any of the exceptions to the general rule against granting a j.n.o.v. in favor of a party carrying the burden of proof exists here.

The judgment n.o.v. must be reversed. Because Plaintiff's second point seeks the same relief, we need not discuss the issue raised in that point.

In the Bank's appeal from the judgment in favor of Plaintiff, it contends the trial court erred in giving Instruction No. 7, Plaintiff's verdict directing instruction. That instruction was:

### Instruction No. 7

Your verdict must be for plaintiff if you believe:

First, defendant did not pay interest due plaintiff on the Certificates of Deposit and cashed, or redeemed the Certificates of Deposit without plaintiff's knowledge or consent; and

Second, because of such failure, defendant's contract obligations were not performed; and

Third, plaintiff was thereby damaged.

Unless you believe that plaintiff is not entitled to recover by reason of Instruction No. 9.[4]

The Bank contends that the instruction was erroneous because there was an issue about the terms of the contract, and the jury was not required to find that Plaintiff's theory on that issue was correct. It argues that Plaintiff claimed that her contract with the Bank did not include a pledge of the CD's as collateral, while the Bank claimed that its promise to repay the CD's was conditioned on their pledge as collateral. The Bank argues, therefore, that Plaintiff's theory that the CD's were not pledged as collateral should have been submitted as a required finding in the verdict director. It contends that MAI 26.06 should have been used rather than MAI 26.02.

The Bank is correct that MAI 26.06 is the appropriate instruction when the terms of the agreement and its breach are in issue. *James O'Brien & Assoc., Inc. v. American Sportsman Travel, Inc.,* 819 S.W.2d 62, 64 (Mo.App.E.D.1991); *Penberthy v. Nancy Transp., Inc.,* 804 S.W.2d 404, 407 (Mo.App. E.D.1991); *Reed Stenhouse, Inc. of Missouri v. Portnoy,* 642 S.W.2d 947, 952 (Mo.App. E.D.1982). The Bank is also correct in its assertion that when the terms of an agreement are in dispute, the verdict directing instruction must hypothesize the proponent's version of the agreement. *Penberthy v. Nancy Transp., Inc.,* 804 S.W.2d at 407; *Schlemer v. Connell Agencies of Kimberling City, Inc.,* 741 S.W.2d 307, 308 (Mo.App.S.D. 1987).

---

4. Instruction No. 9 was the Bank's affirmative defense instruction which required a verdict for the Bank on Plaintiff's claim if the jury believed that Henry instructed the Bank to apply the CD's to the two notes, his actions in doing so were either within the scope and course of his agency for Plaintiff or were ratified by her, and the Bank relied on Henry's instructions in applying the CD's.

In the instant case, however, Plaintiff's claim was based on her contract with the Bank as evidenced by the CD's. Contrary to the Bank's present assertion, its defense to that claim, as submitted to the jury, was not that the CD's were applied to the notes because they were pledged as collateral, but rather that Henry was authorized to, and did, direct the Bank to apply the CD's to the notes. The failure to pursue a defense based on the claim that the CD's were pledged as collateral may have resulted from the realization that both of the notes were single payment one-year notes, neither of which were due when the Bank says it applied the CD's to them at Henry's request. Therefore, even if the CD's were pledged as collateral on the notes, the Bank does not demonstrate that any provision of the contract (whether the contract be the CD's or the notes) authorized it to apply the CD's to those obligations when it did.

In this case, while there was a dispute about whether three of Plaintiff's CD's were pledged as collateral on the $500,000 note, whether that was or was not true was not determinative of Plaintiff's claim. What was determinative, as was recognized and submitted by the Bank, was whether Henry had authority to request the Bank to apply the CD's in payment of the notes before the notes were due. There was no dispute about the provisions of the contract as contained in the CD's. Likewise, there was no dispute about the contract between the parties as contained in the notes, with the exception of whether the CD's were pledged as collateral. Since that dispute was not determinative of the issues as submitted by the parties, we are unable to conclude that the trial court erred in giving Instruction No. 7 under these particular facts.

That portion of the judgment sustaining the Bank's motion for j.n.o.v. is reversed; in all other respects it is affirmed.

BARNEY, P.J., and PREWITT, J., concur.